In re: **ONCO INVESTMENT COMPANY, et al.,**
Debtors.

**MW Post Portfolio Fund Ltd., et al., Plaintiffs,**

v.

**Norwest Bank Minnesota, National Association N/K/A/ Wells Fargo Bank, MN, National Association, et al.**

**Bankruptcy No. 04–010558.**
**Adversary No. 04–54122 (JBR).**

United States Bankruptcy Court, D. Delaware.

Sept. 27, 2004.

Daniel J. Defranceschi, Richards Layton and Finger, Wilmington, DE, for Debtor.

Amy D. Brown, Brian A. Sullivan, Werb & Sullivan, Wilmington, DE, for Plaintiff.

Karen McKinley, Richards, Layton & Finger, P.A., Wilmington, DE, for Defendant.

David W. Carickhoff, Jr., Pachulski Stang Ziehl Young & Jones, Wilmington, DE, for Defendant and Cross–Claimant.

Gregory Thomas Donilon, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Creditor Committee.

## MEMORANDUM OF DECISION ON PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT AND WELLS FARGO BANK'S CROSS–MOTION FOR SUMMARY JUDGMENT

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court for hearing on the Plaintiffs' Amended Motion for Summary Judgment [# 18] and its accompanying Memorandum of Law [# 7]; the Objection of the Debtor–Defendant Oglebay Norton Company [# 27]; the Opposition of the Official Committee of Unsecured Creditors [# 33],[1] the Wells Fargo's Cross–Motion for Summary Judgment [# 35] and its Memorandum of Law in Opposition to the Plaintiffs' Summary Judgment Motion and in Support of its Cross–Motion for Summary Judgment [# 36]; the Plaintiffs' Memorandum of Law in Reply to Objections to the Amended Summary Judgment Motion and In Opposition to Wells Fargo's Cross–Motion for Summary Judgment [# 43]; and Wells Fargo's Reply in Further Support of its Cross–Motion for Summary Judgment [# 49].

For the purposes of this hearing only, the parties agree that, pursuant to 11 U.S.C. § 1124(2), the Debtor may reinstate the Plaintiff's secured debt without including interest at the default rate and what they designate as the "early prepayment premium." The Plaintiffs seeks a declaration that Wells Fargo Bank must pay the foregoing amounts to the extent that it receives any distribution from the Debtor's estate. The Defendants argue that, because the cure contemplated by § 1124(2) does not include default interest and the "early payment premium," Wells Fargo cannot be liable for these amounts. Thus, in its motion for summary judgment, Wells Fargo seeks a declaration that the relevant documents do not render the subordinated noteholders liable for such amounts.

## BACKGROUND

The material facts are not in dispute. The Plaintiffs hold secured notes (the "Senior Notes") that are senior to the subordinated secured notes (the "Subordinated Notes") held by Wells Fargo as the Indenture Trustee. The Senior Notes were issued on October 25, 2002 and mature on October 25, 2008. The Senior Notes carry what the documents define as "Prepayment Premium." According to Section 2.5.2 of the Senior Secured Note Purchase Agreement, the Prepayment Premium must be paid if the Debtor exercises its right to redeem the Senior Notes. The Debtor, however, may not redeem the Senior Notes before their second anniversary which will occur on October 25, 2004.

1. In reconsidering its previous order denying the Creditors' Committee motion to intervene in this adversary proceeding, the Court was swayed, in large part, by the representation that the Committee would carry the laboring oar and thus permitted the Committee. The Committee's Opposition to the Amended Summary Judgment Motion does little more than incorporate by reference the Debtor's and Wells Fargo's objections.

The Prepayment Premium begins at 6% of the principal amount being redeemed and decreases annually until October 25, 2007, after which the Senior Notes may not be redeemed by the Debtor voluntarily. Holders of the Subordinated Notes are not entitled to any payments until the Senior Notes are paid in full, including any Prepayment Premium if the Senior Noteholders are entitled to such Premium.

In a press release issued on January 30, 2004, the Debtors announced that they would not make the interest payment called for under the Subordinated Notes. The press release states that the Debtor "said today it has decided not to make the interest payment due on February 2, 2004." The same press release also notes a statement by the Debtor's president that the company has "sufficient liquidity to operate...." The Plaintiffs allege that the issuance of the press release constituted an "Event of Default" of the Senior Notes because it was an admission "in writing [of] its inability to pay ... its debts as they mature or become due...." The Debtor disputes that this statement is an Event of Default. This dispute, however, is not material to the issue presently before the Court because all parties agree an Event of Default occurred upon the filing of the Debtor's bankruptcy on February 24, 2004. This Event of Default triggered the automatic acceleration of the Senior Notes.

Pursuant to Section 2.6 of Senior Secured Note Purchase Agreement, all Events of Default, whether they trigger automatic acceleration or not, cause interest to increase by 2%. Moreover those Events of Default which result in accelera-

tion of the Senior Notes [2] trigger additional financial consequences. If the acceleration is on or after October 25, 2004, the outstanding amount of the principal includes the Prepayment Premium. If acceleration is before October 25, 2004, then the amount owed is "in a principal amount equal to 118% of the principal amount of the Senior Notes...."

In their proposed plan of reorganization, the Debtors intend to reinstate the Senior Notes pursuant to section 1124(2) of the Bankruptcy Code. They propose to calculate interest at the non-default rate, and without regard to the 18% acceleration premium, and then, pay the Senior Notes in full. They allege that such treatment renders the Plaintiffs "unimpaired" and thus, not entitled to vote on the plan of reorganization. The Plaintiffs object to this treatment [3] and commenced the above adversary proceeding.

## POSITION OF THE PARTIES

The Plaintiffs allege that the pay-off they would receive under the plan is over $11 million less than the amount to which they are entitled. They seek a declaration that they have the independent right to collect this amount from the holders of the Subordinated Notes. Essentially the Plaintiffs claim that the reinstatement of their notes under the plan only reverses the consequences of the default as they relate to the Debtor; the consequences, however, still exist vis-a-vis all non-Debtor parties. Therefore, they reason that, because the Subordinated Noteholders are obligated to turn over to the holders of the senior Notes any payments on account of the Subordinated Notes until the Senior Notes are paid in full, the $11 million must

**2.** The consequences which flow from declared and automatic accelerations are the same.

**3.** The Plaintiffs, who are some of the holders of the Senior Notes, a part of the *ad hoc*

committee of Senior Noteholders which filed an objection to confirmation of the plan on the same grounds.

be paid to the Senior Noteholders out of what would otherwise be earmarked for the Subordinated Noteholders. They allege that the proposed plan which permits payment of the Subordinated Notes before the Senior Noteholders receive the default interest and 18% premium effects, among other things, an impermissible third party release.

The Debtor, supported by the Creditors' Committee and Wells Fargo, argues that the proposed plan reinstates the Senior Noteholders exactly as dictated by section 1124(2) of the Bankruptcy Code, a fact that the Plaintiffs concede for the purposes of this argument. Wells Fargo has filed a cross-motion for summary judgment on the additional basis that the debt instruments do not entitle the Plaintiffs to recover from it what they cannot recover from the Debtor.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of material fact and judgment is appropriate as a matter of law. Fed. R. Bankr.P. 7056 incorporating Fed. R. Civ.P. 56. In the instant case, the material facts are not in dispute and thus summary judgment is appropriate.

### Right to collect from the Subordinated Noteholders

 The parties agree that the Subordinated Note Indenture governs the rights between the Plaintiffs, on the one hand, and the Subordinated Noteholders, on the other. The Plaintiffs allege that their rights against the holders of the Subordinated Notes arise from the Subordinated Note Indenture, specifically Article 11.01; the Defendants do not disagree.

Article 11.01 provides, in relevant part: the indebtedness represented by the [Subordinated] Notes and the payment of principal of, premium, if any, and interest on the Notes are hereby expressly made subordinate and subject in right of payment as provided in this Article Eleven to the prior indefeasible payment and satisfaction in cash of all existing and future Senior Indebtedness.

This Article Eleven shall constitute a continuing offer to all Persons who, in reliance upon such provisions, become holders of or continue to hold Senior Indebtedness; and such provisions are made for the benefit of the holders of Senior Indebtedness; and such holders are made obligees hereunder and they or each of them may enforce such provisions.

At its essence, this language is simply an agreement that Senior Indebtedness will be paid before the Subordinated Notes. In relevant part, Senior Indebtedness, in turn,

means all Obligations due pursuant to the terms of all agreements, documents and instruments providing for, creating, securing or evidencing or otherwise entered into in connection with ... (d) all other Indebtedness of the Company which does not provide that it is to rank PARI PASSU with or subordinate to the [Subordinated] Notes....

Obligations "means, with respect to any Indebtedness, any principal, interest (including post-petition interest), penalties, fees, indemnifications, reimbursement obligations, damages and other liabilities payable under the documentation governing such indebtedness." Indebtedness is defined to include "every obligation of such Person..." while Person is defined in the broadest way possible to include any natural person or legally recognizable entity.

 The parties acknowledge all the above-quoted language but differ as to whether the words create a right for the

Senior Noteholders to recover from the Subordinate Noteholders' distributions, a debt no longer owed by the Company. The mere fact that the parties disagree as to the interpretation does not make the contract ambiguous if one of the interpretations is unreasonable. *Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 94 (3d Cir.2001). Instead an ambiguity exists if there is "intellectual uncertainty, ... the condition of admitting to two or more meanings...." *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980) quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabr.1971).

To determine whether such an ambiguity exists, the Court must "consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Mellon Bank*, 619 F.2d at 1011. Although the Plaintiffs argue that the language was intended to make the Subordinated Noteholders subordinate to any amount not paid by the Debtor if the Debtor *ever* owed such amount, the Court cannot find such an obligation created in the scant language cited by the Plaintiffs. In fact to permit such a result ignores the intended effect of reinstatement under section 1124(2) of the Bankruptcy Code. As the court noted in *In re Taddeo*, 685 F.2d 24, 26–7 (2d Cir.1982),

> [w]hen Congress empowered Chapter 13 debtors to 'cure defaults,' we think Congress intended to allow mortgagors to 'de-accelerate' their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to 'de-accelerate.' This follows from the concept of 'curing a default.' A default is an event in the debtor-creditor relationship which triggers certain consequences-here, acceleration. Curing a default commonly means tak-

ing care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code.

The Plaintiffs' position ignores the *Taddeo* court's recognition that cure and reinstatement are two different concepts. Together they do not just "de-accelerate" the debt; they roll back the clock to the time before the default existed. That this roll-back should be read to be a roll-back as to all parties and for all purposes is more plausible than the Plaintiffs' strained interpretation that once a default exists, it and all of this consequences are frozen in time for all purposes and as to all parties except a debtor who properly invokes the privileges afforded by section 1124(2).

At the end of the path through the definitions, the Court ends where it began, with Article 11.01. As it applies to this dispute, it is simply an agreement that the Subordinated Notes are junior to any "Obligation" to pay any "Indebtedness of the Company" not *parl passu* or subordinate to the junior debt. This interpretation is demanded by the contract and is consistent with the language and intent of section 1124(2).

## CONCLUSION

For the foregoing reasons the Plaintiffs' Motion for Summary Judgment is DENIED. Wells Fargo's Cross–Motion for Summary Judgment is GRANTED.

Separate orders will issue.